Kelly, J.
I disagree with the majority’s conclusion that this case is controlled by the holding in Jackson v Detroit, 449 Mich 420; 537 NW2d 151 (1995). Although both involve overhead bars from which a person hanged himself, a key difference is that the building areas where the bars were installed were designated for significantly different uses. In Jackson the overhead bar was in a prisoner holding cell designated for the general jail population. In this case, the room was designated exclusively for the care and treatment of persons with mental diseases, including those with suicidal tendencies. It is the use to which the building area is put here that controls the determination whether a part of the building, such as an overhead bar, constitutes a dangerous and defective condition. See Bush v Oscoda Area Schools, 405 Mich 716, 730; 275 NW2d 268 (1979).
In the Jackson case, despite the fact that jail officials had notice of the potential for suicide in their holding cell, the vast majority of prisoners held there *240 were not suicidal. See Jackson, supra at 424. The situation is quite different in a mental hospital. The majority states that “the dangers to confined persons generally and to the individual plaintiff were far more obvious in Jackson than in the present case.” Ante at 237.1 believe a much more accurate statement is that the dangers were obvious in both cases, but far more likely to result in death in this case than in Jackson. And, in fact, that was the difference.
The majority errs, also, in reasoning that the current case involves a question of safety in a public building and not an unsafe building, itself. Plaintiffs’ decedent had been involuntarily committed to the defendant’s facility following an attempt to commit suicide. The bathroom in which he later did commit suicide was used by patients who were like him, mentally ill. In light of the use made of the room where it was installed, the overhead bar that plaintiff’s decedent used to support the noose cannot be characterized as a “benign physical feature.” Rather, given the use, that rigid exposed overhead bar accessed for suicide had every potential for being a dangerous and defective condition of the building.
The majority has neglected to consider adequately the purposes for which the building area was specifically used. It has ignored precedent holding that an overhead metal bar might present a “safety in a building” question in one place, but be a “dangerous and defective condition” in another.
I would affirm the Court of Appeals decision reversing summary disposition in favor of defendant. Plaintiffs created a genuine issue of material fact regarding whether the placement of a solid, accessible overhead bar in an area housing suicidal mentally *241 ill patients constituted a dangerous and defective condition within MCL 691.1406.